Rosenblatt, J.
(dissenting). I agree with the Appellate Division that the State’s interpretation of Public Health Law § 230 (6) is at odds with the statute’s purpose and design. In the face of a statute that requires the inclusion of á “lay member,” the State erroneously contends that the disciplinary panel prescribed in Public Health Law § 230 (6) may be comprised of two physicians and a physician’s assistant. The Legislature, however, pointedly imposed this requirement to give the medical consumer a voice in medical disciplinary proceedings. A physician’s assistant is a medical professional subject to the same Public Health Law § 230 disciplinary procedure as are physicians and in my view cannot be considered a “lay member” for purposes of those proceedings. Because the majority accepts the State’s position, I respectfully dissent and would affirm the order of the Appellate Division.
As the Appellate Division correctly recognized, the creation *191 of the State Board for Professional Medical Conduct was a legislative compromise between those who would have vested disciplinary authority in the Department of Education (where the authority resided prior to 1975) and those who would place it under the aegis of the Department of Health. Both approaches carried advantages and drawbacks. Review in the Department of Education (whose Board of Regents consisted of only one physician) had the benefit of involving representatives of the public in disciplinary proceedings. As such, those proceedings would be immune from the pressures and potential favoritism (real or perceived) in judging — and possibly disciplining — members of one’s own profession. A serious disadvantage, however, would be that Department of Education oversight would unreasonably deprive physicians of review by other physicians, i.e., those most knowledgeable in medicine.
On the other hand, vesting review power in the Department of Health posed the converse set of pluses and minuses. Physicians would be judged by knowledgeable professionals, but there would be no input from members of the public, who would presumably be more protective of the medical consumer than of the medical profession.
The Legislature resolved these competing concerns by enacting a statute that provided for review by a three-person committee comprised of two physicians and one “lay member.” Although the Legislature did not define the term “lay member,” the statute’s purpose is clear. The Legislature intended that review by two physicians would endow each panel with considerable medical expertise, while a single lay panelist — an outsider — would reflect the medical consumer’s perspective.[1] This balance cannot be accomplished by counting physician’s assistants as lay members of such panels.
The legislative goal of balancing professional expertise with outside accountability is evident in the statutory history and the words of the 1991 amendment’s sponsor. In language that left no doubt as to the purpose of the panel composition, he explicitly noted that the lay member on the committee would represent “consumer[s]” (see Sponsor’s Mem, Bill Jacket, L 1991, ch 606; Mem of State Exec Dept, 1991 McKinney’s *192 Session Laws of NY, at 2081). Medical providers are the opposite of medical consumers. Because physician’s assistants provide, rather than receive, medical services, the presence of a physician’s assistant as the “lay” panel member frustrates rather than furthers the legislative goal. ...
The majority acknowledges the sponsor’s letter but emphasizes that the Legislature chose to use different language in the final version of the bill (majority op at 189). This emphasis debilitates the practice of looking to legislative history to interpret statutes. If the legislative history and purpose are clear, they should not be discounted merely because the final version of the bill did not include the clearer language. Under the majority’s approach, even the most lucid expressions in the legislative history could be taken as evidence against the interpretation indicated by the legislative history language.
We all agree that because the Legislature did not define “lay member,” we must employ rules of statutory construction to give the term meaning. The State’s interpretation has some surface appeal. Its chief virtue is that it can be applied easily, with the line clearly drawn as between physicians as medical professionals and everyone else as lay. Thus, laypeople would include nurses, emergency medical technicians, hygienists, lab technicians and a host of other trained professionals (in addition to physician’s assistants) who work in the medical field. This division may strike some as inapt but might be debatable were it not for one insurmountable flaw: If a layperson is defined as “anyone who is not a physician,” then all medical residents qualify as laypeople. This cannot be so. No patient would imagine — or want to believe — that the medical resident who diagnoses a brain tumor, removes a kidney or prescribes a narcotic drug (see 10 NYCRR 80.75 [e]) is a layperson. The State’s position thus creates a paradox that the majority does not (and cannot) answer.
In 1991 and 1996, the Legislature specifically amended Public Health Law § 230 (7) to note that the disciplinary proceedings applied to four separate categories of medical professionals — physicians, physician’s assistants, specialist’s assistants and residents (see L 1991, ch 606, § 2; L 1996, ch 627). Before 1991, disciplinary panels heard disciplinary matters against physicians only. The Legislature then amended Public Health Law § 230 specifically to include medical residents and the other two categories of medical professionals — in addition to physicians — as subject to disciplinary review. Obviously this delineation would not have been necessary if physicians and *193 residents were one and the same for purposes of Public Health Law § 230. Inasmuch as the Legislature did not regard them as physicians under Public Health Law § 230, residents must, under the State’s reasoning, be counted as “lay.” And that exposes the fallacy in the State’s position. The purpose of composing a disciplinary panel with two physicians and a consumer is simply not met by using two physicians and a medical resident, or, to put it colloquially, by three doctors. A panel so constituted thwarts the Legislature’s intent and undoes the compromise.
In addition to the legislative intent and statutory history, the common usage and understanding of the term “lay” does not support the majority’s position. Merriam-Webster’s Collegiate Dictionary (cited by the Court) treats a “layman” as “a person who does not belong to a particular profession or who is not expert in some field” (Merriam-Webster’s Collegiate Dictionary 659 [10th ed 2002]). The other dictionary cited by the Court, Black’s Law Dictionary, would treat all persons not “expert on a particular subject” as lay (majority op at 186 [quoting Black’s Law Dictionary 896 (7th ed)]). The Court then emphasizes that physician’s assistants are not physicians. I do not dispute the point, but I believe the Court asks the wrong question.
In addressing the meaning and usage of the term “lay,” the relevant question is not whether physician’s assistants are physicians, but whether physician’s assistants are “expert in some field” or “expert on a particular subject.” Thus, for purposes of statutory interpretation, the question is how we define the relevant “field” or “subject.” If the field is coextensive with the requirements for being licensed as a physician, then the State is correct by dividing the world into two simple categories — physicians and everyone else. If, however, as I believe to be the case, the relevant field is medicine more generally, then those who are trained as professional medical experts (including physician’s assistants and certainly medical residents) cannot be “lay” even though they are not licensed physicians. Because “lay” is undefined in Public Health Law § 230, we must be guided by the statutory purpose in discerning the applicable scope of medical expertise. Accordingly, physician’s assistants cannot be considered “lay,” as their inclusion would defeat the rationale for lay (i.e., consumer) representation on the committee.
In sum, I cannot subscribe to the idea that the category of laypeople under Public Health Law § 230 includes physician’s *194 assistants — who can practice medicine under the direction of a physician (see Education Law § 6542 [1]) — and medical residents — who hold M.D. degrees and practice medicine while completing their training (see generally Education Law §§ 6524, 6526 [1]).
The majority places too much importance on the Legislature’s failure to amend Public Health Law § 230 (6) in 1991 and replace “lay member” with “non-licensee” (as used in the 1991 amendment to Public Health Law § 230 [7]) or “public representative” (from Education Law § 6508). The Court concludes that based on the Legislature’s inaction, the statute equates “lay member” with “non-physician.” I find this argument unconvincing. Surely the Legislature could have replaced “lay member” with “non-licensee” or “public representative.” But of course the Legislature could also have used “non-physician” in 1975, 1991 or any other time if it sought to define “lay member” as “non-physician.”[2]
Education Law § 6508 did not include the phrase “public representative” until 1977 — two years after the passage of Public Health Law § 230 and 14 years prior to the 1991 amendments to Public Health Law § 230 (7) (see L 1977, ch 326, § 1). Of course, the 1991 Legislature could have taken “public representative” from the Education Law and inserted the term into the Public Health Law, but it is difficult to draw meaningful conclusions as to the Legislature’s purpose when it merely fails to incorporate a change of an entirely different statute long after its initial enactment. As the majority notes, reasoning by the Legislature’s failure to do something is appropriate when “[a] contemporaneous amendment to another subdivision of the same statute [would be] all that [i]s required” (majority op at 187 [emphasis added]).
A legislature’s failure to change the wording in a statute implies a desire to retain the previously understood meaning of the wording (see McKinney’s Cons Laws of NY, Book 1, *195 Statutes § 193 [a], at 359). If before 1991 there had been an accepted interpretation of “lay member” to encompass all non-physicians, the retention of the language in 1991 would imply the intended retention of the meaning. The State, however, cites no evidence of such a pre-1991 understanding of the term (for example, case law interpreting the statute), and none is to be found. The term “lay member” is no more clear today than it was in 1975 when the Legislature enacted Public Health Law § 230, or in 1991 when the Legislature amended other provisions of the statute. The Legislature’s failure to replace “lay member” with a more definite term in 1991 cannot be taken to mean that the lawmakers meant to retain a meaning not previously apparent. Rather, the Legislature’s retention of the indefinite phrase “lay member” gives no insight into the phrase’s meaning.
It is difficult to draw a line that precisely defines the outer limits of expertise in any field. Conceivably, the line could be drawn so as to exclude from the lay category every professional who exercises expertise in the medical field. Or a case could be made to exclude only those medical professionals who are licensed. The Appellate Division drew the line by excluding from the lay classification those medical professionals who fall within the disciplinary scheme of Public Health Law § 230, notably physicians, residents, physician’s assistants and specialist’s assistants. While this interpretation is open to the majority’s criticism that other medical professionals should be excluded as well, it is better, I submit, to draw the line there than where the majority has drawn it. By distinguishing between persons subject to the Public Health .Law § 230 disciplinary proceeding and all others, the panel composition would properly reflect the legislative intent as fully as possible. “Lay” panel members would not fear that their decisions could harm their colleagues, and the State would not need to find panelists who have no medical knowledge whatsoever. While not perfect, that would be the best and wisest course available, and would most faithfully vindicate the legislative intent.
For these reasons, I would affirm the order of the Appellate Division.
Judges Smith, Levine and Graffeo concur with Judge Wesley; Judge Rosenblatt dissents and votes to affirm in a separate opinion in which Chief Judge Kaye and Judge Ciparick concur.
In each case: Order reversed, etc.

. The inclusion of lay members on the medical conduct review board was first proposed in an earlier 1975 Assembly bill (A 6969B) that served as a basis for the final compromise bill. A letter by the then-Speaker of the Assembly explained the bill as expanding the membership of the board “to include nine consumers” (Letter from Speaker Stanley Steingut, May 9, 1975, Bill Jacket, L 1975, ch 109; see also 1975 NY Assembly Bill A 6969B).

. For this reason, the majority’s citations to Rangolan v County of Nassau (96 NY2d 42 [2001]) and Matter of Albano v Kirby (36 NY2d 526 [1975]) are unavailing; those cases provide equal support for my conclusion as they do for the majority’s, because the Legislature could have used clearer language to indicate that “lay” meant “non-physician,” if that had been the Legislature’s intent. The Court says that it is reasonable to believe the Legislature did not mean “lay member” to be a “public representative” or a “non-licensee” because the Legislature could have used those terms. Instead, the Court holds that “lay member” does mean “non-physician,” where that term was equally available to the Legislature and was passed over for the less precise “lay member.”